[S. F. No. 602.   Department Two.—August 30, 1897.]

## JEAN F. LACOSTE ET AL., APPELLANTS, *v.* JOSEPH G. EASTLAND ET AL., RESPONDENTS.

PARTITION—JUDGMENT—RESERVATION OF COSTS—DATE OF LIEN—EXECUTION SALE — PRIOR TRANSFER   PENDENTE LITE — TITLE OF TRANSFEREE.—Where costs in a partition suit are not adjudged as part of the judgment of partition, but are reserved for future adjustment, an award of costs thereafter separately made does not become a lien by relation to the time of the filing of *lis pendens*, as would have been the case if the costs had been included and specified in the judgment, but such an award only becomes a lien from the date of the docketing of the separate judgment for costs; and if a transfer has been made by the owner of part of the land prior to the docketing of the judgment against him for costs, though subsequent to the commencement of the partition suit, the title acquired under such transfer is superior to that acquired upon an execution sale under the judgment for costs.

PRESCRIPTION—INTERRUPTION OF ADVERSE POSSESSION—RECOVERY OF POSSESSION.—Where the adverse possession of an occupant of land was disturbed and interrupted before the lapse of five years from its commencement, the fact that possession was recovered by him within five years after such disturbance, is not sufficient to show a prescriptive title by adverse possession during the statutory period of five years.

EJECTMENT—JUDGMENT—VOID ENTRY BY CLERK—LESSORS OF DEFENDANT NOT ESTOPPED.—A judgment in an action of ejectment, entered by the clerk of the court, without authority, is void, and can create no es-

'toppel against the lessors of the defendant, though they were notified of the pendency of the action, and defended it through the defendant.

APPEAL—DEATH OF PARTY TO PARTITION SUIT—SERVICE OF NOTICE UPON ATTORNEY OF RECORD—APPEARANCE OF SECOND ATTORNEY WITHOUT SUBSTITUTION.—Under section 763 of the Code of Civil Procedure, a notice of appeal in an action for partition may be served upon the attorney of record of another party, notwithstanding the death of such party prior to the appeal; and such notice may be served upon the original attorney of record, where there has been no substitution, notwithstanding another attorney may have appeared and signed an amended pleading for such party.

APPEAL from a judgment of the Superior Court of the City and County of Santa Cruz and from an order denying a new trial. JAMES F. BREEN, Acting Judge.

The facts are stated in the opinion of the court.

*S. O. Houghton,* for Appellant.

*Edward R. Taylor,* and *Charles B. Younger,* for Respondent Hihn.

MCFARLAND, J.—This is an action to obtain partition of certain tracts of land called lots 5 and 6 of the Soquel Augmentation rancho. The plaintiffs are Jean F. Lacoste, Joseph Dazet, and Auguste F. Delmouly. Delmouly first appeared as a minor by his guardian, but he attained his majority shortly afterward, and was personally a plaintiff at the time of the filing of the amended complaint. The defendants are Joseph G. Eastland and F. A. Hihn. It is averred in the complaint that Lacoste is the owner of an undivided one-eighth of the premises, Dazet the owner of an undivided fourth, Delmouly the owner of an undivided one-half, and that defendant Eastland is the owner of an undivided one-eighth, and that defendant Hihn owns or claims some interest unknown to plaintiffs in the said interest alleged to be owned by said defendant Eastland. The court found that neither of the plaintiffs nor defendant Eastland owned any interest in the premises, but that all the land described in the complaint was owned by defendant Hihn in severalty. The plaintiffs

appeal from the judgment in favor of Hihn, and also from an order denying their motion for a new trial.

It is doubtful if defendant Hihn in his answer sets forth his interest, or any interest, in the premises in controversy in manner as is provided for in section 758 of the Code of Civil Procedure; but, as the case seems to have been tried upon the theory that he had so set up his interest, we will consider the case as if his answer was in that respect sufficient.

The court below found that respondent Hihn had acquired title to said lots 5 and 6 by virtue of sales made under certain executions issued in a certain action entitled *Hihn* v. *Peck et als.* This last-named case was an action brought by Hihn, the present respondent, for the partition of the Soquel Augmentation rancho. That action was commenced August 14, 1860, and the final decree of partition was rendered September 14, 1864. Maria Luisa Juan was a party defendant to that action, and, in the final decree of partition, she was awarded, in severalty, the said lots 5 and 6 involved in this present action. In the final decree there was no adjudication of costs, or any allusion to costs, except that included in the following sentence of the decree: "And that the parties to this suit have until the next term of this court to file their several bills of costs in this action, and have them apportioned among the parties hereto respectively." At the next term of court, and on December 8, 1864, a judgment in favor of Hihn against the said Maria Luisa Juan for the sum of thirty-four dollars and fifty-six cents was rendered, that being her proportion of the costs due said Hihn. Another judgment for costs due the referees in the partition suit was also entered against the said Maria Luisa Juan for a small sum of money. Executions were issued upon these two judgments; Hihn redeemed from the sale made on the judgment in favor of the referee, and he became the purchaser on the sale upon the execution in his favor, and afterward received the sheriff's deed of the interest of said Maria Luisa Juan. But long

previous thereto, to wit, on July 12, 1862, the said Juan had conveyed one-half of her interest in the said rancho to Alfred Moreau and Ramon Don; and on July 20, 1862, she had mortgaged all her remaining interest in the rancho to one Gambert, who had assigned the mortgage to Charles Mulet, who had foreclosed the mortgage, and became a purchaser under the sale; and the court finds that under these proceedings all the interest of said Juan had passed to the plaintiffs herein and to the defendant Eastland, unless the title thus passing was subject to and defeated by the said sale under execution for costs to the respondent Hihn. And this question is the only one calling for extended discussion. We think that the court erred in holding that Hihn obtained title under said execution.

The contention of respondent as to the question just above stated was expressly determined against him by this court in the case of *Hihn* (the present respondent) v. *Parkhurst et al.*, No. 1683. That case was not reported, but the transcript, briefs, and opinion of the court have been referred to by counsel on both sides, and are to be found in the clerk's office and court library. In that case the plaintiff undertook to assert title to the premises here in controversy by virtue of a purchase under the same executions relied on in the case at bar. The plaintiff there had recovered judgment for the premises involved in the present suit, but the judgment was reversed by this court. At the time of the pendency of the suit of *Hihn* v. *Peck*, and at the time the judgments were rendered in said case, section 308 of the practice act provided as follows: "The costs of partition, including fees of referees and other disbursements, shall be paid by the parties respectively entitled to share in the land divided, in proportion to their respective interests therein, *and may be included and specified in the judgment.* In that case they shall be a lien on the several shares, and the judgment may be enforced by execution against such shares, and against other property held by the respective parties." In *Hihn* v. *Parkhurst* the court said:

"When the final decree of partition was rendered in September, 1864, the question of costs was reserved until the next term of the court; and, on the 8th of December, 1864, judgment was rendered in favor of the plaintiff in the partition, the plaintiff herein, against several persons for costs, and, among others, against Maria Luisa Juan for thirty-four dollars and sixty-five cents. It is provided by section 306 of the practice act that the costs of partition shall be paid by the respective parties, in proportion to their respective interests in the land, 'and may be included and specified in the judgment. In that case they shall be a lien on the several shares, and the judgment may be enforced by execution against such shares, and against other property held by the respective parties.' It is contemplated by the section that the costs may or may not become a lien upon the several shares of the parties as the parties to whom they are due may elect, and the solution of the question as to whether they become a lien depends upon whether they are specified and included in the judgment of partition. The statute does not say that the costs shall in all cases become a lien, but that 'in that case'—that is, when they are 'included and specified in the judgment'—they become a lien. The lien here referred to is one that takes effect by relation at the time of the filing of the notice of *lis pendens*, and without docketing the judgment; and the express provision that such lien may be acquired in a particular mode negatives the right to acquire it in any other mode. . . . . . Although this judgment grew out of the proceedings and judgment in the partition suit, it is clear that it is separate and distinct from, and forms no part of, the judgment of partition. From the time it was docketed it became a lien upon the real estate owned by Maria Luisa Juan; but, as the interest claimed by the intervenor, one fifty-fourth, had been conveyed to them long before the docket entry was made, it was not subject to the lien of the judgment. Judgment reversed and cause remanded for a new trial." It is said

by respondent that this decision has weight only as authority, and is not binding upon the respondent here as the law of the case; that is true, but as authority it is directly in point, and we see no reason upon principle for overruling it. In the decree of December, 1864, there is no judgment or adjudication whatever upon the subject of costs; no party is awarded costs, and the question as to who shall be entitled to costs is left entirely open. It is entirely different from the ordinary case where a judgment awards costs to a particular party, leaving a blank for the amount thereof, to be filled by the clerk as provided by a certain section of the code. In the latter case the clerk is to perform the mere ministerial office of inserting in the judgment the amount of costs which the party adjudged to be entitled to them shall present in his costs bill within the time specified in the statute. But in the case at bar the whole question of costs was left for future adjudication; and, under the statute, as correctly we think interpreted by the court in *Hihn* v. *Parkhurst*, the subsequent judgment for costs became a lien only from the date of its rendition; and, at the time of its rendition, the title of Maria Luisa Juan had passed from her and vested in other parties. It is contended by respondent that the transcript in *Hihn* v. *Parkhurst* did not present the question as it is presented in the case at bar; but we see no material difference in the two transcripts upon this point. In *Hihn* v. *Parkhurst* the record states that the judgment-roll in *Hihn* v. *Peck* was introduced; the judgment, however, does not appear in full in the transcript, but it is stated that "a final decree was entered on the 14th of September, 1864, partitioning said rancho, and reserving the question of costs until the next term of said court, with leave to either party to file bills of costs before that time"; and it is further stated "that said final decree did not provide for nor ascertain the adequate share of the costs of said partition proceedings to be paid by the respective parties to whom portions of said premises were thereby allotted; but separate judgments

were entered against the several defendants for the amounts taxed against them respectively." This was substantially a correct statement of what actually occurred; the question of costs was reserved, and separate judgments were afterward entered for costs; and the two transcripts upon this point were thus substantially the same.

In the conclusions of law of the court below, the judgment for Hihn is placed entirely upon his title under the sale upon said execution; but it is also found as a fact that Hihn acquired title to lot six by adverse possession, and respondent contends that the judgment should be affirmed upon that finding. This contention, however, cannot be sustained. The evidence that Hihn had possession of the lot by actual inclosure is exceedingly slight; but, in addition to that consideration, while the court finds that Hihn entered into the adverse possession in 1871, the time of the year not being given, and held it thereafter for six years, it is also found "that at some time during the year 1875 said occupation and possession were disturbed, but that said Hihn recovered possession of said lot 6 within five years after such disturbance." This finding is not sufficient to support an averment of adverse possession during the statutory period of five years.

The court finds that all the facts stated in a certain amendment to the answer of defendant Hihn are true; and in that amendment it was averred that in 1876 Hihn commenced an action against one Bowker for the recovery of the possession of said lot 6; that in October, 1876, he recovered judgment against said Bowker for lot 6; that Bowker was in possession of said lot as tenant for the plaintiffs herein and one Gambert; that said lessors of Bowker were informed of the pendency of said suit and defended the same through said Bowker; and that therefore the judgment against Bowker is binding upon plaintiffs, and estops them from maintaining this suit as to lot 6. Without discussing other grounds upon which appellants contest the validity of this

judgment as against them, it is sufficient to say that the judgment was entered by the clerk of the court, and that he had no authority to enter the same. It was therefore void. (*Stearns* v. *Aguirre,* 7 Cal. 443; *Kelly* v. *Van Austin,* 17 Cal. 564; *Junkans* v. *Bergin,* 64 Cal. 203.)

Respondent makes some twenty distinct "exceptions to the transcript"; he also moves to dismiss the appeal from the judgment upon several distinct grounds; and he also moves to dismiss the appeal from the order denying a new trial upon several distinct grounds. We do not deem it necessary to notice these various points in detail; it would require a very lengthy opinion to do so, and it is sufficient to say that we do not think any of them tenable. An affidavit has been filed on the part of respondent to the effect that the defendant Eastland died a short time before the appeal was taken; and it is contended that he should have been served with notice of appeal. The appeal is from the judgment in favor of Hihn, and it is difficult to see how Eastland is interested in or would be affected by the appeal. Moreover, the transcript shows that the notice of appeal was served on the attorney of Eastland —that is, upon the attorney who signed Eastland's original answer, and, although another attorney signed an amended answer, there was never any substitution of attorneys, and under section 763 of the Code of Civil Procedure the service was good, although Eastland at the time of the service was dead.

The judgment and order denying a new trial are reversed.

TEMPLE, J., and HENSHAW, J., concurred.

Hearing in Bank denied.