[Civ. No. 27813. Second Dist., Div. One. July 21, 1964.]

CHARLES PRINCE, Plaintiff and Appellant, v. SONNIE GAY, LTD., INC., Defendant and Respondent.

542

Bertram S. Harris for Plaintiff and Appellant.

Gillin & Scott and Philip H. Gillin for Defendant and Respondent.

WOOD, P. J.—Appeal from an order granting the motion of defendant Sonnie Gay, Ltd., Inc., for order quashing service of summons.

The complaint (unverified) alleges in substance as follows: Defendant Sonnie Gay, Ltd., Inc., is a Delaware corporation. Defendant Davidson Automatic Merchandising Co., also known as Davidson Automatic Manufacturing Co., is a Delaware corporation, is licensed to transact business in California, and has its principal place of business in Los Angeles County. Defendant Davidson Merchandising Co. has changed its corporate name and is now known as Automatic Retailers of America, Inc., and the defendant Sonnie Gay, Ltd., Inc., is a subsidiary of that defendant corporation. At Los Angeles, California, on July 28, 1959, a written agreement was entered into between plaintiff Prince and defendant Sonnie Gay whereby said defendant corporation gave an exclusive agreement to the plaintiff to initiate negotiations for the sale of

Sonnie Gay, and as compensation for said services that defendant agreed to pay plaintiff a sum not to exceed 5 per cent of the total sales price. Plaintiff initiated negotiations for such sale to the other defendants, which sale was consummated in 1960 or 1961 at a total price which is unknown to plaintiff but it is in excess of $400,000. Plaintiff is informed and believes and he alleges that, as a part of the consideration for Sonnie Gay, the other defendants agreed to assume and pay all its liabilities, including the obligation herein sued upon. Pursuant to said written agreement, the defendants became indebted to the plaintiff about November 1, 1960, in the sum of not less than $20,000.

Plaintiff Prince obtained an order of the superior court authorizing service of process on the foreign corporation Sonnie Gay by delivering process to the Secretary of State, which order directed that the Secretary of State forward the process to defendant Sonnie Gay at its principal office at 411 Puuhale Road, Honolulu, Hawaii.

On April 23, 1963, the defendant Sonnie Gay filed a notice of motion to quash service of summons upon the ground that the court lacked jurisdiction over said defendant.

An affidavit of John W. Lines, in support of said motion, stated that affiant is the president of Sonnie Gay, Ltd., Inc., a Delaware corporation; said defendant has not, and is not, qualified as a foreign corporation in California; said defendant has not had, and does not have, any property in California, and has not at any time maintained any agent, officer, or other person in the state upon which service of summons can be made; the purpose for which the corporation was formed, and for which it has functioned, is that of transacting business in Honolulu County, Hawaii, and this is the only business it is or has been transacting.

A declaration of plaintiff Prince, in opposition to said motion to quash service of summons, stated: The action is for the recovery of a "finder fee" pursuant to a written contract entered into between plaintiff and Sonnie Gay at Los Angeles, California, on July 28, 1959. On July 26, 1959, at Los Angeles, California, there was a meeting with plaintiff, Donn C. Sells, president of Sonnie Gay, and Ann Gaylord, secretary-treasurer of Sonnie Gay, at which time plaintiff was orally authorized to negotiate for the sale of Sonnie Gay. On July 28, 1959, this oral agreement was reduced to writing and signed by Sonnie Gay, Ltd., Inc., by Donn C. Sells, president, and Ann Gaylord, secretary-treasurer, and by

plaintiff Prince. The office of defendant Automatic Retailers of America, Inc., formerly known as Davidson Automatic Merchandising Co., Inc., was at 5950 West Jefferson Boulevard, Los Angeles, during 1959 and 1960. On January 5, 1960, plaintiff had a conference with Davre J. Davidson, president, and Henry R. Davidson, vice-president, of Davidson Automatic Merchandising Co., for the purpose of having said corporation purchase Sonnie Gay. There were subsequent meetings between plaintiff and Davre J. Davidson, as well as telephone conversations, at Los Angeles, California, pursuant to plaintiff's contract with Sonnie Gay for the sale of Sonnie Gay to Davidson Automatic Merchandising Co. At Los Angeles, conferences were held by Donn C. Sells and Ann Gaylord, as the president and the secretary-treasurer of Sonnie Gay, with Davre J. Davidson and Henry R. Davidson in reference to the purchase and sale of Sonnie Gay at Los Angeles. The defendant now known as Automatic Retailers of America, Inc., did as a result of these conferences at Los Angeles purchase all the stock of Sonnie Gay. The address of defendant Automatic Retailers of America, Inc., is now 10889 Wilshire Boulevard, Los Angeles. The defendants have entered into contracts for equipment rentals at Los Angeles, and the defendant Sonnie Gay has paid to defendant Automatic Retailers of America, at Los Angeles, between November 1961 and October 1962, 29 payments, the lowest of the payments being $34.40 and the highest $25,865.75. Herman G. Minter, who resides in Sherman Oaks, California, is a director and the treasurer of Sonnie Gay, Ltd., Inc., and his official address on corporate records is 10889 Wilshire Boulevard, Los Angeles, California. Herman G. Minter is also a director, senior vice-president, treasurer, and a member of the executive committee of the board of directors of defendant Automatic Retailers of America, with his address at 10889 Wilshire Boulevard, Los Angeles.

A declaration of Bertram S. Harris, attorney for plaintiff, in opposition to said motion to quash service, stated: On May 3, 1963, the deposition of John Lumpp, the secretary of defendant Automatic Retailers, was taken at the office of declarant, and copies of original records of defendant Automatic Retailers were produced. Mr. Lumpp testified that Davidson Brothers was a division of Automatic Retailers. He also testified ''to six invoices'' representing sales of vending machines to Sonnie Gay, which invoices showed that the balances were payable in monthly installments on each sale. On

the Seeberg contract and the new Bally contract there are invoices stating that the items were set up on conditional sales contracts. On the second Bally contract there is an invoice stating that the equipment is put on contract. There is an additional invoice for 100 units of Round Zephry Recept-copper color for which the net billing is $1,280. He testified that the invoices were sent by Automatic Retailers to Sonnie Gay in Honolulu, and then payments were made by Sonnie Gay to Automatic Retailers at Los Angeles. There were two invoices showing depreciation and rental charges on vending machines, automobile and trucks, and one invoice on rental charges for September 1962 on vending machines, automobile and trucks. Mr. Lumpp testified that Automatic Retailers rented to Sonnie Gay automobiles and trucks; but he did not know the exact amount. There was also a check voucher of Sonnie Gay showing a payment of a gross amount of $25,865.75, a balance of $25,865.75; and the "remarks" column shows "on account."[1]

In plaintiff's affidavit and in Mr. Harris' declaration references are made to answers of Automatic Retailers to interrogatories submitted to it by plaintiff. (The clerk's transcripts include 52 interrogatories submitted to Automatic Retailers, and the answers thereto; and include 33 interrogatories submitted to plaintiff, and the answers thereto.)

The motion to quash service of summons was granted.

Appellant contends that the court erred in its ruling, because the evidence shows that the corporation Sonnie Gay was "doing business" and was "present" in California.

Section 411 of the Code of Civil Procedure provides: "The summons must be served by delivering a copy thereof as follows: 1. . . . 2. If the suit is against a foreign corporation . . . doing business in this State; in the manner provided by sections 6500 to 6504, inclusive, of the Corporations Code." The service of process herein, by delivering copies of summons and complaint to the Secretary of State pursuant to order of court, was in accordance with the provisions of said sections of the Corporations Code.

In *Buckner* v. *Industrial Acc. Com.*, 226 Cal.App.2d 619, 623 [38 Cal.Rptr. 332], it is said: "The test for amenability of a foreign corporation to California process is

---

[1]The deposition of Mr. Lumpp has not been filed. It was stipulated at oral argument on appeal that if the deposition of Mr. Lumpp were filed it would substantiate the declaration of Mr. Harris.

. . . whether or not it [corporation] has committed 'any act or acts creating such contact with the state as to make it reasonable to require the foreign corporation to defend the particular suit which is brought, providing the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' [Citations.]''

 Some of the circumstances relative to entering into an agreement to pay a commission in connection with a sale of Sonnie Gay were as follows: On July 28, 1959, the plaintiff and two officers of Sonnie Gay (the president and the secretary-treasurer) held a meeting in Los Angeles where they made an oral agreement in which plaintiff was authorized to negotiate a sale of Sonnie Gay. The oral agreement was reduced to writing, which was a letter-agreement executed by Sonnie Gay in Honolulu and mailed to plaintiff Prince in Los Angeles, where he signed it and ''mailed back'' a copy of it to Sonnie Gay. (See Interrogatory No. 18 of Automatic Retailers, and the answer of plaintiff thereto.) The letter-agreement was amended by letter of November 14, 1959, mailed by plaintiff (in Los Angeles) to Sonnie Gay in Honolulu, which letter was ''initialed'' on the bottom thereof by officers of Sonnie Gay in Honolulu and was returned to plaintiff in Los Angeles. (See Interrogatory No. 20 of Automatic Retailers, and answer of plaintiff thereto.)

The contract relative to paying a commission was made in Los Angeles. In *Hardy* v. *Musicraft Records, Inc.,* 93 Cal. App.2d 698, 701-702 [209 P.2d 839], it was said: ''The transaction was initiated by the letter mailed by the corporation in New York to plaintiff Kenneth C. Hardy at his residence in Los Angeles. There was no enforceable contract of sale until plaintiffs signed and placed in the United States mail the purchase commitment letter which had been drafted in New York and forwarded with the corporation's letter to Mr. Hardy. The letter from the corporation . . . was an offer to sell and the signed and mailed acceptance constituted the only consummated or enforceable contract between the parties. Since the offer was received and accepted in California by plaintiffs and the certificates were delivered in this state to them by defendant's agent, which accepted payment at the time of delivery, the contract was in all respects completed here. . . . The agreement by plaintiffs to purchase the shares having been made in California and the certificates representing the shares having been delivered to them in California the transaction is governed by the law of this state.''

In *Empire Steel Corp. of Texas, Inc.* v. *Superior Court,* 56 Cal.2d 823, 833 [17 Cal.Rptr. 150, 366 P.2d 502], it is said: "Moreover, the contract was entered into and was to be performed here, another factor weighing in favor of California adjudication."

Automatic Retailers, whose address is 10889 Wilshire Boulevard, Los Angeles, owns all the stock of Sonnie Gay. Mr. Minter, a resident of California, is a director and the treasurer of Sonnie Gay. His official address as such corporate official is 10889 Wilshire Boulevard, Los Angeles (the same address as the address of Automatic Retailers). He was also a director, senior vice-president, and treasurer of Automatic Retailers. In several transactions Sonnie Gay purchased vending machines from Automatic Retailers upon conditional sales contracts, and on several occasions Sonnie Gay also rented vending machines, automobiles, and trucks from Automatic Retailers. During a period of approximately a year (November 1961 to October 1962) Sonnie Gay made 29 payments to Automatic Retailers, aggregating $78,451.87, which payments ranged in amounts from $34.40 to $25,-865.75.

In *American Continental Import Agency* v. *Superior Court,* 216 Cal.App.2d 317 [30 Cal.Rptr. 654], wherein a motion to quash service of summons on a foreign corporation was denied, the corporation had made many purchases of aircraft parts in California for a total amount of approximately $600,000. It was said therein (pp. 321 and 322), in quoting from another case: "Under the minimum contacts test of the *International Shoe* case regular sales solicitation alone can constitute doing business rendering the foreign corporation amenable to process in actions engendered by such activities. [Citations.] Since there is no distinction for jurisdictional purposes between regular selling and regular buying [citations], the *Rosenberg* case is as obsolete for the one as for the other. Many cases anteceding the *Rosenberg* case and many since the *International Shoe* case have sustained jurisdiction on the basis of the defendant's purchasing activities in the state. [Citations.]" In the *American Continental* case, it was also said (p. 322): "In the present case Aconia's [foreign corporation's] purchases constituted a systematic and continuous course of business and were made in a very substantial amount. Moreover, there was more than the mere purchase of California goods pursuant to orders originating in Germany; on four occasions Mr. Kawa-

lecki came to California for the purpose of expediting compliance by the vendor with the agreements for the sale of articles.'' In the present case, as above shown, there was a systematic and continuous course of business involving a very substantial amount. In the present case, however, there was no evidence that a representative of the vendee came to California to expedite compliance by the vendor with the agreements of sale, but there was evidence that all the stock of the vendee was owned by the vendor, and that an officer of the vendee corporation (director and treasurer) was also an officer of the vendor corporation (director, senior vice-president, and treasurer) and his address as such official of the vendee was the same address as the address of the vendor. In *Brunzell Construction Co., Inc.* v. *Harrah's Club*, 225 Cal.App.2d 734, 744 [37 Cal.Rptr. 659], wherein it was held that service of process on a foreign corporation was valid, one of the evidentiary factors considered in determining the validity of the service was that all the stock of two corporations involved therein (the foreign corporation and a California corporation) was owned by one person.

In the present case there is no material controversy as to the occurrences which give rise to the legal questions involved.

 It appears that Sonnie Gay was present and doing business in California, and that the court erred in granting the motion to quash service of summons.

The order is reversed.

Fourt, J., and Lillie, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 18, 1964.